IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT W. TAYLOR D/B/A | ) | |
| TAYLOR'S TRADING POST | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.: 1:12-cv-00138-JEJ |
| | ) | |
| ALPHONSO HUGHES | ) | District Judge: Hon. John E. Jones |
| Director of Industry Operations, | ) | |
| Bureau of Alcohol Tobacco | ) | Magistrate Judge: Martin C. Colson |
| Firearms and Explosives, | ) | |
| | ) | |
| Respondent. | ) | |

## PETITIONER'S MEMORANDUM IN SUPPORT OF
## F.R.C.P. 56(d) MOTION FOR EXTENSION OF TIME
## TO COMPLETE DISCOVERY

Now comes the Petitioner, Scott W. Taylor d/b/a Taylor's Trading Post, by and through counsel, to submit the following memorandum of points and authorities in support of his motion for a continuance pursuant to Rule 56(d)[1] of the Federal Rules of Civil Procedure.

### INTRODUCTION

As is often the case in any lawsuit, there is much more to this story than ATF has presented to the Court, and reality is much more nuanced than ATF would have this Court believe. While the parties are in absolute agreement that the Gun Control Act is designed to maintain the traceability of firearms and to help keep them out of the hands

---

[1] "As part of a general restyling of the Federal Rules of Civil Procedure in December 2007, the language of Rule 56(f) was amended an incorporated into Rule 56(d). These amendments were intended to by stylistic only, and Rule 56(d) carries forward without substantial change the provisions of former subdivision (f)." *See, Commonwealth v. Sebelius,* 2012 U.S. App. LEXIS 5431 (3rd Cir. 2012).

of people such as criminals, drug addicts, and crazy people, there is absolutely no evidence whatsoever before this Court that Taylor has ever failed to answer an ATF trace request or has ever transferred a firearm to such a person.

While Taylor would <u>never</u> minimize even the types of violations for which he was cited, the point for present purposes is that when recordkeeping violations are the primary basis for a revocation determination, a licensee should be afforded a full and complete opportunity to defend himself, including discovery, because unlike when truly egregious -- and indefensible -- conduct is involved, ATF's decision to revoke is necessarily dependent on a myriad of information that is not available to the licensee at the administrative stage.

Toward this end, Taylor has submitted a FOIA request to ATF seeking information relating to his inspection history and ATF's decision-making process (i.e., whether, and if so how, it went about applying its governing internal policies and procedures). *See,* Exhibit A: Rudd Affidavit, ¶ 6. Specifically, as early as December 2011 Taylor requested the following:

1.  A copy of all federal firearms licensee inspections conducted of the client and all documents/reports/correspondence resulting from such.

2.  A copy of all written communication regarding the client that was considered as part of the revocation process including SIRS, e-mails, memorandum, etc.

3.  A copy of all written communication regarding the client that was prepared after the decision to revoke was finalized.

4.  The complete administrative record, including hearing transcript, officer report, etc.

5. Any and all other materials in ATF's possession and/or control regarding this licensee and/or his FFL.

*Id.,* ¶ 7. The only materials provided by ATF in response to the FOIA request included Taylor's prior license applications with certain redactions. *Id.*, ¶ 8. Not a single piece of substantive information was provided by ATF, and although Taylor is administratively challenging such, without relief from this Court at this time, ATF's plan to shield its actions from any actual review will succeed. *Id.*, ¶ 9.

In addition, and perhaps most significantly, Taylor has never received the very policies and procedures that govern ATF's revocation decisions and, if not properly applied, constitute unauthorized action as a matter of law. *Id.*, ¶ 12. Taylor is requesting a copy of ATF's policies and any and all documentation relating to the application of such to the decision to revoke his license. *See,* Exhibit B: Taylor's First Set of Discovery Requests. Without such, Taylor is significantly limited in his ability to mount a defense on this most critical of issues. *See,* Rudd Aff., ¶ 14. There is nothing strange or unconventional about Taylor's request, and discovery is both possible and actually occurs in these exact kinds of cases.[2] What is strange and unconventional was ATF filing its motion for summary judgment the same day it answered, but such should not preclude Taylor's ability to defend himself and his business.

---

[2] *See, e.g. Top Brass Sports, Inc. v. Gonzalez,* W.D. Tenn Civ. No. 05-2455 (Mar. 28, 2006), at 8 ("As 18 U.S.C.A. § 923(f)(3) expressly contemplates the admission of additional evidence, it follows that some limited discovery should be permitted to determine what additional relevant evidence is available.") (Exhibit C); *Top Brass Sports, Inc. v. Gonzalez,* W.D. Tenn Civ. No. 05-2455 (Mar. 28, 2006), at 8 (May 30, 2008), at 9 ("ATF's argument that only evidence that creates substantial doubt on the DIO's findings should be allowed in addition to the administrative record is not proper here because of the *de novo* standard.") (Exhibit D).

In short, Respondent issued ATF's Notice of Revocation of Taylor's license, a hearing was held before an ATF hearing officer before which Taylor had no ability to call witnesses, conduct discovery, or exercise subpoena powers, and Respondent (who provided the initial notice) ultimately revoked Taylor's FFL. Up to this point Taylor has had no opportunity to effectively defend his business and livelihood and he is depending upon the Court to afford him such an opportunity. The question becomes, "if not now, when?" ATF would understandably prefer never, but that is not fair and is not the law.

## SUMMARY JUDGMENT

Despite the seriousness of the issues and the complete lack of discovery that would help shed light on such, ATF moved for summary judgment simultaneously with filing its answer. Summary judgment, however, is only proper when "there is no genuine issues as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct 2548, 91 L.Ed.2d 265 (1986). The court must view all evidence and make all reasonable inferences in the light most favorable to the non-moving party. *See, Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation marks and cite omitted).

After adequate time for discovery and upon a motion for summary judgment which meets the test stated above, an entry of summary judgment is appropriate if the party against whom summary judgment is sought fails to make a showing on an element to that party's case on which that party will bear the burden of proof at trial. *See, Celotex*, 477 U.S. at 324. Parties who find themselves in the position of having to respond to a

motion for summary judgment before adequate (or even any) discovery has been completed must seek their remedy through Fed.R.Civ.P.56(d):

> If a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> 1) defer considering the motion or deny it;
> 2) allow time to obtain affidavits or declarations or to take discovery; or
> 3) issue any other appropriate order.

*See,* Fed.R.Civ.P. 56(d).

District courts have a duty under Rule [56(d)] to ensure that the parties have been given a reasonable opportunity to make their record complete before ruling on a motion for summary judgment. 11 James Wm. Moore, et al., *Moore's Federal Practice* § 56.10 (8)(a) (3d ed. 1997). Courts have held that Rule 56(f) should be liberally construed. *See, e.g., Stearns Airport Equip. Co. v. FMC Corp.,* 170 F.3d 518, 534 (5th Cir. 1999) (stating that Rule 56(f) motions are generally favored and should be liberally granted). Accordingly, "where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *See, Costlow v. United States,* 552 F.2d 560, 564 (3rd Cir. 1977); citing, *Ward v. United States,* 471 F.2d 667, 670-71 (3d Cir. 1972).

## ARGUMENT

## I.   THE COURT'S ANALYSIS IS NOT LIMITED TO THE RECORD OF ATF'S INFORMAL REVOCATION HEARING.

Pursuant to 18 U.S.C. § 923(f)(3), Taylor is entitled to a *de novo* judicial review of the ATF's decision to revoke his FFL.  The law is clear that this standard of review means that the ATF's decision is entitled to no presumption of correctness and that the district court may attach no weight at all to the decision if it so chooses.  *See, Willingham*

*Sports, Inc. v. BATF*, 348 F. Supp. 2d 1299, 1306 (S.D. Ala. 2004); citing, *Stein's, Inc. v. Blumenthal,* 649 F.2d 463, 467 (7th Cir. 1980); *3 Bridges, Inc. v. United States,* 216 F. Supp.2d 655, 657 (E.D. Ky. 2002) (ATF's "administrative decision is not clothed in this Court with any presumption of correctness"); *Weidner v. Kennedy,* 309 F. Supp. 1018, 1019 (C.D. Cal. 1970) (same).

Moreover, "to the extent that the ATF argues that the federal court must uphold the agency decision as long as there is substantial evidence to support it, the Court cannot agree, as such a formulation would contravene the 'de novo' statutory language and the case authorities that have held otherwise." *Willingham*, 348 F.Supp. 2d at 1306.  Thus, there are three main issues for this Court to consider *de novo* during these proceedings: 1) whether Taylor committed the violations set forth in the Final Notice, 2) if so, whether such violations were committed willfully, and 3) if so, whether ATF's controlling internal policies permit his revocation -- that is, was ATF authorized to revoke Taylor's FFL? *See,* 18 U.S.C. § 923(e), (f)(3); *Best Loan Co. v. Herbert,* 601 F.Supp.2d 749, 752 (E.D. Va. 2009).

Because of the nature of its review and the seriousness of the issues before it, the Court's analysis is not limited to the record of ATF's informal revocation hearing with no compulsory process, no evidentiary safeguards, and no real opportunity to mount a defense of Taylor's property interest in his license:

> In a proceeding conducted under this subsection [i.e., a petition for judicial review], the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2).

*See,* 18 U.S.C. 923(f)(3).  Thus, this Court has "the discretion to receive additional

evidence to be considered along with that in the administrative record when some good reason to do so either appears in the administrative record or is presented by the party petitioning for judicial review." *See, Stein's Inc. v. Blumenthal,* 649 F.2d 463, 466 (7th Cir. 1980). Here, fair play and justice require that Taylor have the chance to discover evidence with regard to ATF's revocation of his FFL to demonstrate that such was not, in fact, permitted or authorized under ATF's own policies and the law.

While ATF presents the issues in a very simplistic and formulaic manner as if to conclude that mere evidence of some number of alleged violations standing alone is a sufficient basis to revoke his license, such is not the case, and at the very least preliminary discovery is necessary for Taylor to be able to defend his license and his livelihood, and this Court is undoubtedly authorized to permit such.

## II. JUSTICE REQUIRES THAT TAYLOR BE PERMITTED TO TAKE DISCOVERY ON CRITICAL ISSUES RELATING TO THE DEFENSE OF HIS LICENSE.

### A. Taylor Is Entitled To Conduct Discovery To Refute ATF's Determination Of Willfulness.

While Taylor anticipates presenting evidence to address certain of the violations themselves, even if such violations existed, if they were not committed willfully under the Gun Control Act ("GCA") and/or if Taylor has demonstrated that he can operate successfully going forward, then Taylor will prevail and his license should be reinstated. For present purposes, it is primarily how ATF arrived at its determination of willfulness that requires further discovery because, as demonstrated below, the analysis is not as simplistic as ATF would suggest.[3]

---

[3] ATF does not address Taylor's compliance plan and future operations other than to completely dismiss them contrary to ATF's own standards and case law.

A dealer willfully violates the GCA when it "intentionally, knowingly or recklessly violates known legal requirements. Just as [the United States Supreme Court in] *Safeco* construed the phrase 'willfully fails to comply' to reach only deliberate, knowing or reckless statutory violations [citation omitted], so we interpret the phrase 'willfully violated' to do the same." *See, Armalite, Inc. v. Lambert,* 2008 U.S.App.Lexis 21570, *13 (6th Cir. 2008). Thus, conduct that is merely negligent does not rise to the level of willful under the GCA and cannot support a license revocation. *Id. See also, RSM, Inc. v. Herbert,* 466 F.3d 316, 320-322 (4th Cir. 2006) ("To be sure, a single, or even a few, inadvertent errors in failing to complete forms may not amount to 'willful failures', even when the legal requirement to complete the forms was known."); *Willingham Sports, Inc. v. BATF,* 415 F.3d 1274, 1277 (11th Cir. 2005); *Prino v. Simon,* 606 F.2d 449, 451 (4th Cir. 1979).[4]

*"*Willfully" was added to the GCA by Section 103(5) of the Firearms Owners Protection Act of 1986 ("FOPA"), Pub. L. 99-308, 100 Stat. 449, 453 (1986), and Congress intended that "willfully" in a license revocation context be interpreted in such a way that it has real meaning and significance. *See,* S.Rep.No. 98-953, legislative history of FOPA at 94 ("The purpose of that change was to avoid prosecutions in cases where, for instance, a licensee carelessly committed a technical record-keeping violation or other minor, inadvertent infraction.") and at 88 ("the purpose of this change is to ensure that licensees are not revoked for inadvertent errors or technical mistakes."); *Rich v. United States,* 383 F.Supp. 797 (S.D.Ohio 1974) ("Congress was concerned with purposeful,

---

[4]     ATF cites the "plain indifference" standard in its motion, but in a vacuum, such is meaningless because it begs the question of what "indifference" means. According to dictionary.com, indifference means a lack of interest or concern, or unimportance.

intentional conduct to be punished by revocation of licenses rather than mere negligence on the part of the licensee.").

In a case quite similar to the matter at hand, a licensee in North Carolina was found to have violated the GCA, but since the violations were not found to be willful, the revocation of its FFL was vacated:

> Rather than compel the court to find willfulness due to petitioners' repeated violations, the holding in RSM empowers the court to infer willfulness at the point repeated violations become sufficient to conclude the licensee does not care to meet its requirements, thereby establishing plain indifference, or willfulness.
>
> The court finds that petitioners violated the GCA and its implementing regulations on each of the occasions detailed in the Final Notice...
>
> The court also finds that respondent has not shown, by a preponderance of the evidence, that any of the violations were willful.
>
> [The licensees] took many steps to increase their compliance with the GCA, including printing an employee manual dedicated to proper cataloging techniques, holding repeated training courses on how to keep proper records, establishing a calendar system to keep up with multiple sales, and designating one staff member at each store to be in charge of the A&D books.
>                          * * * *
> Finally, the government's own inspectors uniformly testified that the employees at [the licensees] were courteous and helpful throughout the inspections and even identified some of their own mistakes for the inspectors.
>
> Other than the violations themselves, there was no evidence that petitioners displayed a disregard for the regulations. In fact, the evidence shows the opposite.

See, Jim's Pawn Shop v. Bowers, 2008 U.S. Dist. Lexis 97199, *21-23 (E.D.N.C. Sept. 16, 2008). Here, Taylor believes that this Court will ultimately come to the same

conclusion as the Court in *Jim's Pawn Shop*, and he intends to present evidence in support of such a conclusion, but it necessarily includes information that is solely in ATF's possession that ATF refuses to provide unless compelled to do so by this Court.

**B.**     **Taylor Is Entitled To Explore Whether ATF Followed Its Governing Internal Policies In Revoking His License.**

The Office of Inspector General issued a report highlighting glaring problems within ATF prior to 2004, including but not limited to ATF's system of inspection, reporting, and enforcement which resulted in non-uniform and inconsistent treatment of FFL's with regard to adverse actions such as the revocation of licenses:

> To ensure that all FFLs are treated consistently, and that the FFL inspection program is as efficient as possible to maximize the number of inspections conducted annually, a national ATF policy should require that inspections be conducted in a uniform manner, that inspections procedures are limited to the steps needed to accomplish a valid review, and that violations are processed in a uniform and appropriate manner.

*See,* Exhibit E: (D.O.J. Report No. I-2004-005 (July 2004)).  Toward that end, ATF implemented its National Federal Firearms License Adverse Action Policy which emphasized the importance of fairness and consistency when deciding whether it should revoke a license or take some lesser action:

> A national policy for administering adverse actions is necessary to promote consistent and fair resolution of violations.  Revocation should be undertaken for willful violations of the GCA or its regulations that could affect public safety or hamper the Bureau's ability to reduce violent crime.

*See,* ATF B 5370.2 at ¶ 2(b).  This policy was revised in 2009 via ATF Order 5370.1A, the National Firearms Licensee Adverse Action Policy, and no version of the AAO has ever been produced.

If a federal agency "announces and follows – by rule or by settled course of adjudication – a general policy by which its exercise of discretion will be governed, an irrational departure from that policy…could constitute action that must be overturned as arbitrary, capricious, [or] an abuse of discretion…" *See, INS v. Yang,* 519 U.S. 26, 32 (1995); *See also,* 5 U.S.C. § 706(2)(A) (permitting court to find unlawful agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."); *Morton v. Ruiz,* 415 U.S. 199, 235 (1974) (agencies must follow their own procedures "even where the internal procedures are possibly more rigorous than otherwise would be required.").

ATF is the only party that possesses information as to: 1) the policies and procedures governing when revocation is appropriate as opposed to remedial administrative action, and 2) ATF's application (or lack thereof) of such policies and procedures to the case before the Court. *See,* Rudd Aff., ¶ 15. In support of its motion, ATF submitted the affidavit of Alphonso Hughes claiming that ATF's policies were followed in this matter:

> I followed all ATF policies and procedures with respect to
> the issuance of these two notices.

ATF, however, cannot make such a claim in support of its motion while at the same time shielding its policies from Taylor or the Court. Taylor is entitled to defend himself, and more importantly, in performing its duties of reviewing ATF's actions, the Court must necessarily answer this question for itself. Under *INS v. Yang* and *Morton v. Ruiz*, this question is of vital importance in this Court's *de novo* review of ATF's action in revoking Taylor's license. Accordingly, Taylor should be permitted to conduct limited discovery into this question before having to respond to ATF's motion for summary judgment.

WHEREFORE, Taylor respectfully requests that this honorable Court grant his Fed.R.Civ.P. 56(d) motion, stay consideration of ATF's motion for summary judgment until the conclusion of discovery in this matter, and award any further relief deemed just and appropriate.

RESPECTFULLY SUBMITTED, this the 11th day of April, 2012.

DATED: April 11, 2012

/s/Timothy R. Rudd
Scott L. Braum *pro hac vice*
*Email*: slb@braumlaw.com
Timothy R. Rudd *pro hac vice*
*Email*: trr@braumlaw.com
SCOTT L. BRAUM & ASSOCIATES, LTD.
812 East Franklin Street, Suite C
Dayton, OH 45459
*Telephone*: (937) 396-0089
*Facsimile*: (937) 396-1046

William J. Fulton – *local counsel*
*Email:* bfulton138@aol.com
106 Walnut Street
Harrisburg, PA 17101
*Telephone:* (717) 233-5133
*Facsimile:* (717) 232-2559
PA. Attorney ID 25457

Attorneys for Petitioner

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT W. TAYLOR D/B/A )
TAYLOR'S TRADING POST )
)
     Petitioner, )
)
    v. )    Case No.:    1:12-cv-00138-JEJ
)
ALPHONSO HUGHES )    District Judge: John E. Jones
Director of Industry Operations, )
Bureau of Alcohol Tobacco )    Magistrate Judge: Martin C. Colson
Firearms and Explosives, )
)
    Respondent. )
_____

## CERTIFICATE OF SERVICE
_____

    I, the undersigned, do hereby certify that I have filed a true and correct copy of

the above memorandum using the Court's ECF system and notification will automatically

be sent to any and all counsel that has entered an appearance in this matter.

    SO CERTIFIED, this 12th day of April 2012.


               /s/ Timothy R. Rudd
               Counsel for Petitioner